## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW MEXICO

DAVID PADILLA,

       Plaintiff,

v.                                                                      CIV. NO. 13-103 GBW

CAROLYN W. COLVIN, *Acting*
*Commissioner of the Social Security*
*Administration*,

       Defendant.

### ORDER GRANTING PLAINTIFF'S MOTION TO REVERSE OR REMAND

This matter comes before the Court on Plaintiff's Motion and Memorandum to Reverse or Remand the Social Security Agency (SSA) Commissioner's decision to deny Plaintiff disability insurance benefits. *Doc. 24.* For the reasons discussed below, the Court DISMISSES Plaintiff's due process claim, GRANTS Plaintiff's motion to remand, and REMANDS this action to the Commissioner for further proceedings consistent with this opinion.

I.    **BACKGROUND**

    A.  **Plaintiff's Medical History**

Plaintiff, who was 42 years old at the time he filed for disability benefits, claims disability due to a history of hepatitis C, low back pain, depression, personality disorder, and adjustment disorder. AR at 18.

Plaintiff was first diagnosed with hepatitis C[1] around 1994.  *See* AR at 490, 535. Medical records from 2000 and 2001 at the New Mexico Corrections Department, where Plaintiff was incarcerated, indicate that he was suffering from hepatitis C, was "sleeping excessively," and "[felt] fatigued a lot."  AR at 353; *see also* AR at 336.  Plaintiff also underwent medical tests that showed abnormally high liver enzymes, potentially indicating liver disease.[2]  Tests completed in March 2009 indicated high enzyme levels for AST and ALT.[3]  AR at 382.

On March 20, 2009, Plaintiff saw Barbara May-Valencia, Ph.D., for a mental status consultative examination.  AR at 384-393.  Dr. May-Valencia stated her diagnostic impression that Plaintiff suffered from "Mood Disorder with mixed features due to hepatitis C," "Hepatitis C," and a "personality disorder."  AR at 385.  At the examination, Plaintiff reported that he had "been unable to afford treatment [for hepatitis C] as he did not have $5 copay."  AR at 386.  With regard to his work history, Dr. May-Valencia noted that Plaintiff "has been unable to maintain jobs due to absences from fatigue," and that "[h]e is in need of . . . treatment for the hepatitis C."  AR at 387.  She found that Plaintiff had "problems focusing and concentrating on what he is doing," and that his mood was

---

[1] Hepatitis C is "a viral disease that leads to swelling . . . of the liver."  *Hepatitis C*, MEDLINEPLUS MEDICAL ENCYCLOPEDIA, NATIONAL INSTITUTES OF HEALTH, http://www.nlm.nih.gov/medlineplus/ency/article/ 000284.htm (last updated Sept. 8, 2014). The condition "accounts for a large percentage of cirrhosis, liver failure, and liver cancer cases."  Stedman's Medical Dictionary 784 (Marjory Spraycar et al. eds., 26th ed. 1995) [hereinafter Stedman's].

[2] *AST (aspartate aminotransferase)*, MEDLINEPLUS MEDICAL ENCYCLOPEDIA, NATIONAL INSTITUTES OF HEALTH, http://www.nlm.nih.gov/medlineplus/ency/article/003472.htm (last updated Sept. 8, 2014); *ALT (Alanine transaminase)*, MEDLINEPLUS MEDICAL ENCYCLOPEDIA, NATIONAL INSTITUTES OF HEALTH, http://www.nlm.nih.gov/medlineplus/ency/article/003473.htm (last updated Sept. 8, 2014).

[3] AST (aspartate aminotransferase) is "an enzyme . . . [used as] a diagnostic aid in viral hepatitis . . . ."  Stedman's at 155; ALT (alanine aminotransferase) is an "enzyme . . ." used in clinical diagnosis of viral hepatitis . . ."  Stedman's at 41.

"depressed, agitated easily."  AR at 385.  Dr. May-Valencia stated that "[o]nce [Plaintiff's]

physical symptoms have stabilized he may benefit from vocational rehabilitation to assist

him in developing a vocation that will be less stressful physically."  AR at 387.

Shortly thereafter, on March 28, 2009, Dr. Amy Kogut, M.D., conducted a disability

determination examination of Plaintiff.  AR at 394-96.  Plaintiff reported that he was

"working about 20 hours a week" and that he could "dress himself and feed himself."

AR at 394.  Dr. Kogut found that "[h]e can stand for about one hour out of a total of eight

hours . . . . [and he] can walk on level ground for about two hours or one mile . . . and has

no problem sitting."  AR at 394.  During her examination, she noted that Plaintiff

"ambulated without difficulty" and "got on and off the exam table . . . without difficulty."

AR at 395.  While examining Plaintiff's abdomen, she observed that "[t]he liver edge was

down 2 cm."  AR at 395.  Dr. Kogut's assessment indicated hepatitis C "per patient," and

stated that the condition did "not appear . . . to have a significant limitation in function

for patient."  AR at 396.

On March 22, 2010, Plaintiff was admitted to the emergency room of St. Vincent

Regional Medical Center for a head injury he obtained after falling down in the street.

AR at 457-58.  Doctors ordered a CT scan of Plaintiff's head and neck, and Plaintiff was

released the same day.  AR at 457, 459.

In April and May 2010, Plaintiff was seen at Healthcare for the Homeless.  AR at

490-495.  Plaintiff said that he wanted to get his "numbers for his hepatitis," but "was

very unclear as to what he want[ed]."  AR at 493.  In June 2010, Healthcare for the

3

Homeless referred Plaintiff to the University of New Mexico Gastroenterology Department for his hepatitis C and abdominal pain.  AR at 490.  The referral noted that Plaintiff had "mildly elevated" liver enzyme levels.  AR at 490, 495.

On May 15, 2010, Plaintiff was seen at the emergency room at University of New Mexico Hospital (UNMH) after being assaulted.  AR at 496-501.  Doctors conducted a CT scan of his head and brain, but "[n]o acute intracranial pathology [was] identified."  AR at 500-501.

Plaintiff consulted physicians at First Choice clinic in April and May 2011.  AR at 511-519.  He reported "low back pain" and "depression."  AR at 518.  Blood work conducted in May 2011 again indicated that Plaintiff had high ALT liver enzymes.  AR at 514.

Plaintiff was examined at the UNM Health Sciences Center in May 2011 for abdominal pain and rectal bleeding.  Doctors performed a CT scan of Plaintiff's abdomen, and found "mild nodularity of the liver, correlate for chronic liver disease."  AR at 534. On June 17, 2011, Plaintiff had an elective outpatient colonoscopy and esophagogastroduodenoscopy.  AR at 521, 523.  After an abdominal ultrasound, doctors noted their impression of "mild hepatomegaly," or "[e]nlargement of the liver."  AR at 532; Stedman's at 787.

On May 5, 2011, Plaintiff was seen at UNMH for lower back pain and knee pain. AR at 539-543.  Impressions included "[m]ild osteophytosis of the lumbar spine."  AR at 544.

4

Plaintiff met with Dr. Martin Kistin, M.D., a gastroenterologist at UNMH, on May 11, 2011.  AR at 535.  Plaintiff explained that "he has had abdominal pain for the last two years."  AR at 535.  Dr. Kistin recommended a number of tests and stated that if Plaintiff "does have hepatitis C we will likely consider hepatitis C treatment."  AR at 537.

After a disability determination hearing held before Administrative Law Judge (ALJ) Barry Robinson on March 18, 2011, the ALJ asked the state agency to schedule an updated psychological evaluation to assess the existence and severity of Plaintiff's mental impairments, and an updated medical evaluation to assess his physical impairments.  AR at 15.

Plaintiff underwent a consultative examination by Cathy Simutis, Ph.D., on August 11, 2011.  AR at 502-505.  She conducted a mental status exam, in which she noticed that Plaintiff "appeared to be in pain."  AR at 504.  Dr. Simutis diagnosed Plaintiff with "adjustment disorder with depressed mood," "personality disorder," and "chronic pain due to a medical condition."  AR at 504.  In her prognosis, she concluded that Plaintiff's "ability to understand and remember instructions . . . [, his] ability to concentrate and persist in a task . . . [, and his] ability to interact with co-workers and the public" all appeared to be mildly limited.  AR at 505.

On August 27, 2011, Dr. Natavan Karimova, M.D., performed a consultative examination of Plaintiff.  AR at 507-510.  Dr. Karimova noted that Plaintiff was not taking any medications, but that he had taken Tramadol in the past for back pain.  AR at 508.  Dr. Karimova stated that Plaintiff had been diagnosed with hepatitis C, but "never had a

physician to follow up with after that . . . ."  AR at 510.  She found that Plaintiff's complaints regarding his back pain were inconsistent because "he was able to flex down and put his shoes on and take them off without any problems."  AR at 510.  She concluded that Plaintiff "would be able to lift and carry 50 pounds occasionally, lift and carry 25 pounds frequently."  AR at 510.  He could also "[s]tand and walk six hours cumulatively in an eight-hour workday[, s]toop and crouch frequently[, and, if] needed, [could] sit cumulatively six hours in an eight-hour workday."  AR at 510.

Plaintiff was examined at UNMH on several occasions between August 2011 and January 15, 2012.  AR 545-574.  The medical records were sent to the Appeals Council and made part of the record.  AR at 4.

On September 7, 2011, Plaintiff was seen at the UNMH Gastroenterology Clinic. AR at 546-549.  He was assessed with "Chronic hepatitis C genotype 3," and the physician, Dr. Hartwell, noted that "it appears possible that [Plaintiff] may have some degree of cirrhosis[4] . . . ."  AR at 547.  Plaintiff reported that "his main concern at this time is his fatigue, which . . . he has had for many years."  AR at 546.  Dr. Hartwell noted that Plaintiff had never been treated for hepatitis C but was interested in knowing his options. AR at 546.  Plaintiff was referred to the hepatitis C clinic to discuss treatment possibilities. AR at 548.

Plaintiff returned to the UNMH Gastroenterology Clinic on December 9, 2011.  AR

---

[4] Cirrhosis is "scarring of the liver and poor liver function. It is the last stage of chronic liver disease." *Cirrhosis*, MEDLINEPLUS MEDICAL ENCYCLOPEDIA, NATIONAL INSTITUTES OF HEALTH, http://www.nlm.nih.gov/medlineplus/ency/article/000255.htm (last updated Sept. 8, 2014).

at 567-70.  He was diagnosed with cirrhosis, but "denied any symptoms due to hepatitis C or cirrhosis including jaundice, fevers or rash."  AR at 567.  The physician, Dr. George A. Holman, M.D., reported that Plaintiff has "chronic lower back pain," but "denies any . . . fatigue."  AR at 568.  Dr. Holman planned "to treat the hepatitis C especially given the patient's early cirrhosis in order to stop worsening of the disease."  AR at 569.  However, he found that Plaintiff "was not a good candidate for treatment at this time."  AR at 569.

### B.  <u>Procedural History</u>

Plaintiff filed his Title II and XVI applications for disability insurance benefits and supplemental security income on January 12, 2009, alleging disability beginning on September 1, 1994.  AR at 15.  Plaintiff's claims were initially denied on April 16, 2009, and, upon reconsideration, on June 26, 2009.  AR at 15, 87, 95.

Plaintiff requested a hearing before an Administrative Law Judge (ALJ), and a hearing was scheduled for May 21, 2010.  AR at 15.  Plaintiff failed to appear, and the hearing was rescheduled for March 18, 2011, in Albuquerque, New Mexico, before ALJ Barry Robinson.  AR at 15.  A vocational expert, Pamela Bowman, also attended the hearing, as well as Plaintiff's counsel at the time, Feliz Martone.  AR at 15.

The ALJ subsequently issued an opinion finding that Plaintiff had not been disabled from September 1, 1994, to September 22, 2011, the date of the ALJ's decision.  AR at 28.  In determining whether Plaintiff was entitled to benefits, the ALJ applied the sequential five-step analysis as required by Social Security Administration (SSA) regulations.  20 C.F.R. §§ 404.1520, 416.920.  The SSA Appeals Council denied Plaintiff's

request for review of the ALJ's decision, making the ALJ's decision the final agency

decision.  AR at 1-3.  Plaintiff now requests that this Court reverse or remand this

decision.

## II.   LEGAL STANDARDS

### A.   District Court Review of Agency Decision

Pursuant to 42 U.S.C. § 405(g), a court may review a final decision of the

Commissioner only to determine whether it (1) is supported by "substantial evidence,"

and (2) comports with the proper legal standards.  *Casias v. Sec'y of Health & Human Serv.*,

933 F.2d 799, 800-01 (10th Cir. 1991).  "In reviewing the ALJ's decision, 'we neither

reweigh the evidence nor substitute our judgment for that of the agency.'"  *Bowman v.*

*Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008).

Substantial evidence is "more than a mere scintilla. It means such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Casias*,

933 F.3d at 800.  "The record must demonstrate that the ALJ considered all of the

evidence, but an ALJ is not required to discuss every piece of evidence."  *Clifton v. Chater*,

79 F.3d 1007, 1009-10 (10th Cir. 1996).  "[I]n addition to discussing the evidence

supporting his decision, the ALJ must also discuss the uncontroverted evidence he

chooses not to rely upon, as well as significantly probative evidence he rejects."  *Id*. at

1010.  "The possibility of drawing two inconsistent conclusions from the evidence does

not prevent [the] findings from being supported by substantial evidence."  *Lax v. Astrue*,

489 F.3d 1080, 1084 (10th Cir. 2007) (citing *Zoltanski v. F.A.A.*, 372 F.3d 1195, 1200 (10th

Cir. 2004)).

### B.  **Due Process**

The Due Process Clause provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV § 1.  The "standard analysis under that provision proceeds in two steps:  We first ask whether there exists a liberty or property interest of which a person has been deprived, and if so we ask whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 131 S. Ct. 859, 861 (2011).

"Social security hearings are subject to procedural due process considerations." *Yount v. Barnhart*, 416 F.3d 1233, 1235 (10th Cir. 2005).  In Social Security cases, "[a] claimant whose application for such benefits is denied is entitled to 'reasonable notice and opportunity for a hearing with respect to such decision.'" *Allison v. Heckler*, 711 F.2d 145, 146-47 (10th Cir. 1983) (quoting 42 U.S.C. § 405(b)(1).

### III.    DISABILITY DETERMINATION PROCESS

For purposes of Social Security disability insurance benefits, an individual is disabled when he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  To determine whether a person satisfies these criteria, the SSA has developed a five-step test.  *See* 20 C.F.R. §§ 404.1520, 416.920.   If the

Commissioner is able to determine whether an individual is disabled at one step, he does not go on to the next step.  *Id*. §§ 404.1520(a)(4), 416.920(a)(4).  The steps are as follows:

(1) Claimant must establish that he is not currently engaged in "substantial gainful activity."  If claimant is so engaged, he is not disabled.

(2) Claimant must establish that he has "a severe medically determinable physical or mental impairment . . . or combination of impairments" that have lasted for at least one year.  If claimant is not so impaired, he is not disabled.

(3) Claimant must establish that his impairment(s) are equivalent to a listed impairment that has already been determined to be so severe as to preclude substantial gainful activity.  If listed, the impairment(s) are presumed disabling.

(4) If the claimant's impairment(s) are not listed, claimant must establish that the impairment(s) prevent him from doing his "past relevant work."  If claimant is capable of returning to his past relevant work, he is not disabled.

(5) If claimant establishes that the impairment(s) prevent him from doing his past relevant work, the burden shifts to the Commissioner to show that claimant is able to "make an adjustment to other work."  If the Commissioner is unable to make that showing, claimant is deemed disabled.

*Id*.; *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005).

Step four of this analysis consists of three phases.  *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996).  First, the ALJ determines the claimant's residual functional capacity in light of "all of the relevant medical and other evidence." 20 C.F.R. §§ 404.1545(a)(3), 416.945(a)(3).  A claimant's RFC is "the most [he] can still do despite [his physical and mental] limitations."  *Id*. §§ 404.1545(a)(1), 416.945(a)(1).  Second, the ALJ determines the physical and mental demands of claimant's past work.  "To make the necessary findings, the ALJ must obtain adequate 'factual information about those work demands which have a bearing on the medically established limitations.'"  *Winfrey*, 92 F.3d at 1024 (quoting SSR 82-62, 1982 WL 31386, at *3 (Jan. 1, 1982)).  Third, the ALJ determines

whether, in light of his RFC, the claimant is capable of meeting those demands. *Id*. at 1023, 1025.

The ALJ issued his decision on September 22, 2011, denying Plaintiff's request for benefits. AR at 12-28. In making his decision, he applied the required five-step sequential analysis. At step one, the ALJ determined that Plaintiff had engaged in substantial gainful activity in 2006, when he earned $11,986.14 working for a hotel as a shuttle driver and maintenance man. AR at 18. The ALJ also noted that Plaintiff had minimal earnings which were insufficient to constitute substantially gainful activity in 1995, 2005, 2007, 2008, and 2009. AR at 18. Plaintiff had no earnings, however, from 1996-2004 or from 2010 through the first two quarters of 2011. AR at 18. Next, at step two, the ALJ found that Plaintiff's personality disorder and adjustment disorder were "severe impairments" under the meaning of the Social Security regulations. AR at 18. The ALJ concluded that Plaintiff's "medically determinable impairments of hepatitis C, low back pain, and depressive disorder do not cause more than minimal limitation in the claimant's ability to perform basic work activities and are therefore nonsevere." AR at 18. At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of a listed impairment. AR at 22. At step four, the ALJ determined that Plaintiff had a residual functional capacity (RFC) to perform "a full range of work at all exertional levels but with the following nonexertional limitations: He can understand, remember, and carry out simple instructions, make simple decisions, attend and concentrate for two hours at a time, interact adequately with

co-workers and supervisors and respond appropriately to changes in a routine work setting." AR at 23. The ALJ concluded that Plaintiff was unable to perform his past relevant work as a hotel shuttle driver or maintenance man in light of this RFC. AR at 27. At the fifth and final step, the ALJ concluded that Plaintiff was not disabled because he was "capable of making a successful adjustment to other work that exists in significant numbers in the national economy," namely as a kitchen helper, laundry worker, or jewelry sorter. AR at 28.

IV.   ANALYSIS

   A.   **Plaintiff's Motion to Remand**

   Plaintiff argues that the ALJ erred by (1) finding that Plaintiff's hepatitis C and back pain were not severe impairments at step two (*doc. 24* at 1-2), and (2) improperly discounting Plaintiff's credibility concerning the impact of his symptoms on his ability to work (*doc. 24* at 3-4).

   Plaintiff offers additional medical evidence from 2013 in support of his position, which the Defendant claims is "outside of the relevant period, and is therefore not relevant to the issue before this Court of whether Plaintiff was disabled at any time from September 1, 1994, to September 22, 2011—the date of the ALJ's decision."[5] *Doc. 27* at 6. The Court agrees, and will therefore not consider this evidence. *See Chambers v. Barnhart*, 389 F.3d 1139, 1142 (10th Cir. 2004).

   The Court, having carefully reviewed the record and applicable law, finds that the

---

[5] Because the Appeals Council denied review, "the Administrative Law Judge's decision is the final decision of the Commissioner of Social Security . . . ." AR at 1.

ALJ's credibility assessment regarding the extent of Plaintiff's symptoms was not supported by substantial evidence.  I therefore grant Plaintiff's request to remand this case.

> **1.  *Any error based on the ALJ's failure to find that Plaintiff's hepatitis C or lower back pain were "severe impairments" at step two was harmless.***

Plaintiff alleges that the ALJ erred in finding that his hepatitis C and lower back pain were non-severe impairments at step two of the sequential analysis.

At the second step of an ALJ's analysis, he must determine whether the claimant has established that he has a medically severe "impairment or combination of impairments."  20 C.F.R. §§ 404.1520(c); 416.920(c)**.**  If an ALJ errs at step two, the error will be rendered harmless if the ALJ proceeds to consider steps three through five. *Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("Nevertheless, any error here became harmless when the ALJ . . . proceeded to the next step of the evaluation sequence."); *Dray v. Astrue*, 353 F. App'x 147, 149 (10th Cir. 2009) (holding that an ALJ only need find one severe impairment at step two, and explaining that "step two is designed to weed out . . . those individuals who cannot possibly meet the statutory definition of disability") (internal quotations omitted); *Burk v. Astrue*, 493 F. App'x 913, 916 (10th Cir. 2012) (finding no reversible error where the ALJ found at least one severe impairment at step two of the analysis and proceeded to step three).

Here, despite finding at step two that Plaintiff's hepatitis C and lower back pain were non-severe, the ALJ proceeded to discuss the remaining steps of the evaluation

process.  Thus, even if the ALJ erred at step two, the error was rendered harmless.  As

such, the Court need not consider this objection any further.

> **2.  *The ALJ's credibility determination is not supported by substantial evidence.***

Plaintiff argues that the ALJ erred in assessing his credibility concerning the extent

to which his symptoms—particularly fatigue due to hepatitis C—affected his ability to

work.  *Doc. 24* at 3.  In making the credibility determination, the ALJ considered the

following: (a) Plaintiff's daily activities were sometimes greater than what he reported

(AR at 24), (b) Plaintiff "stopped working at past jobs for reasons not related to the

allegedly disabling impairments," (AR at 25), (c) the record contains no opinions from

treating physicians indicating that the claimant is disabled or has functional limitations

(AR at 25), and (d) Plaintiff served time in prison for armed robbery (AR at 24).

In order to evaluate the severity of subjective symptoms such as pain or fatigue

when determining a Plaintiff's RFC, the ALJ engages in a two-part process.  *Policy*

*Interpretation Ruling Titles II And XVI: Evaluation of Symptoms in Disability Claims:*

*Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186, at *7

(July 2, 1996).  First, he determines whether "there are medical signs and laboratory

findings demonstrating the existence of a medically determinable . . . impairment[] that

could reasonably be expected to produce the symptoms."  SSR 96-7p at *1.  The ALJ

must consider all of the medically determinable impairments in conjunction, and not

simply those determined to be severe at step two.  *See* 20 C.F.R. §§ 404.1545(a)(2),

416.945(a)(2).  Once the ALJ has assessed the existence of a medically determinable impairment, he then evaluates the claimant's credibility concerning "the intensity, persistence, and functionally limiting effects of the symptoms . . . ."  SSR 96-7p at *1.

Credibility determinations are within the province of the ALJ, and the Court should generally defer to the ALJ's credibility determinations.  *Castellano v. Sec'y of Health & Human Serv.,* 26 F.3d 1027, 1030 (10th Cir. 1994) (citing *Williams v. Bowen,* 844 F.2d 748, 755 (10th Cir. 1988)); *see also Thompson v. Sullivan,* 987 F.2d 1482, 1489 (10th Cir. 1993) (citations omitted).  However, the ALJ's opinion must contain "specific reasons" for his credibility findings that are "closely and affirmatively linked" to evidence in the record.  *Hardman v. Barnhart,* 362 F.3d 676, 678-79 (10th Cir. 2004).  Moreover, credibility determinations must be supported by substantial evidence.  *Kepler v. Chater,* 68 F.3d 387, 391 (10th Cir. 1995) (citation omitted).

When assessing a claimant's credibility, the ALJ considers:

(1) The claimant's daily activities;
(2) The location, duration, frequency, and intensity of the individual's pain or other symptoms;
(3) Factors that precipitate or aggravate the symptoms;
(4) The type, dosage, effectiveness, and side effects of any medication the claimant takes or has taken to alleviate symptoms;
(5) Treatment, other than medication, the claimant receives or has received for his symptoms;
(6) Any measures other than treatment the claimant uses or has used to alleviate his symptoms;
(7) Any other factors concerning the individual's functional limitations and restrictions due to his symptoms.

20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); SSR 96-7p (1996).

The ALJ may also consider the consistency of the claimant's statements, both internally and with other information in the record, as well as the claimant's treatment history and medical records.  SSR 96-7p (1996).

Here, the ALJ found that Plaintiff could "perform a full range of work at all exertional levels," with certain nonexertional limitations.  AR at 23.  Although he agreed that Plaintiff had a "medically determinable impairment[]"of hepatitis C (AR at 18, 24), the ALJ concluded that Plaintiff's "statements concerning the intensity, persistence and limiting effects of [his] symptoms [were] not credible . . . ."  AR at 24.

      *a) Plaintiff's Daily Activities*

The ALJ first determined that Plaintiff was not credible because "the record reflects work activity after the alleged onset date," which "indicate[s] that the claimant's daily activities have, at least at times, been somewhat greater than the claimant has generally reported."  AR at 24.

The Tenth Circuit has made clear that a "conclusion in the guise of findings" is insufficient; the ALJ must link the factors to evidence in the record.  *Hardman*, 362 F.3d at 679.  The ALJ must make clear "the link between the evidence and credibility determination" by "explain[ing] why the specific evidence relevant to each factor led him to conclude claimant's subjective complaints were not credible."  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995).  The purpose of this requirement is to ensure that a reviewing court can meaningfully "assess whether relevant evidence adequately supports the ALJ's conclusion . . . ."  *Hardman*, 362 F.3d at 679 (quoting *Clifton v. Chater*, 79 F.3d 1008, 1009

(10th Cir. 1996)).

This section of the ALJ's opinion is devoid of any meaningful evaluation or analysis. The ALJ states that Plaintiff's daily activities are inconsistent with what Plaintiff reported. He does not, however, explain how these things conflict, nor does he specify the activities to which he is referring. Without more, the ALJ has not provided enough information for this Court to adequately review his credibility determination, let alone determine whether substantial evidence exists to support this assertion.

> b) *Plaintiff's Prior Work Experience*

Second, the ALJ stated that "[t]here is evidence that [Plaintiff] has stopped working at past jobs for reasons not related to the allegedly disabling impairments." AR at 25. The ALJ notes, for example, that Plaintiff left the Navy because he "did not want to work and did not like his job," and that Plaintiff stopped working at other jobs because he did not show up or was too tired to go to work. AR at 25.

As an initial matter, Plaintiff left the Navy in 1986, well before his alleged disability onset date. *Doc. 28* at 2. Thus, the fact that he left this position for reasons unrelated to his physical impairments does not affect his credibility. With respect to Plaintiff's other jobs, the ALJ's assertions are contradicted by the hearing transcript. Plaintiff reported that he left his jobs because he was unable to perform due to his fatigue. *See, e.g.,* AR at 50, 51. He admits that he was, on at least one occasion, "fired for absences." AR at 25. However, Plaintiff specifically testified that he "was trying to recover and trying to get [his] strength back up" during this time period. AR at 53. The

ALJ's claim that Plaintiff left for reasons "not related to [his] allegedly disabling impairment[]" of hepatitis C is, therefore, inaccurate.  Further, the record clearly shows that Plaintiff consistently reported to his examining physicians that he was unable to work due to his fatigue.  *See, e.g.,* AR at 385, 386, 503.

For the foregoing reasons, the Court finds that this portion of the ALJ's credibility determination is not supported by substantial evidence.

### c)  *Paucity of Medical Records from Treating Physicians*

Third, the ALJ states that "the record does not contain any opinions from treating physicians indicating that the claimant is disabled or even has limitations greater than those determined in this decision.  There are no medical source statements or other expressions of opinions from treating doctors."  AR at 25.

While an "individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints," there may be "good reasons" for this failure.  SSR 96-7p at *7.  An ALJ "must not draw any inferences" based on the frequency of treatment "without first considering any explanations that the individual may provide . . . ."  SSR 96-7p at *7.  "The fact that the individual may be unable to afford treatment and may not have access to free or low-cost medical services is a legitimate excuse."  *Madron v. Astrue*, 311 F. App'x 170, 178 (10th Cir. 2009) (unpublished) (internal quotations omitted) (quoting SSR 96-7p at *8).

At the hearing, the ALJ asked Plaintiff why he had not sought treatment for his hepatitis C.  Plaintiff responded that he was offered treatment while incarcerated but,

"when they offered it to [him, he] only had . . . months left to do [] it [and] they said [he] wouldn't be there long enough to receive the treatment."  AR at 51-52.  After being released from prison, Plaintiff encountered difficulties obtaining an appointment with a physician because he was homeless.  AR at 54.  He testified that he had been homeless for about two years until August 2010.  AR at 46-47.  Plaintiff explained that he had "tried repeatedly" to get an appointment at Healthcare for the Homeless, but that "sometimes they require a little payment . . . like a co-pay or something and I'm on the street, I didn't even have that."  AR at 54; *see also* AR at 386.

Plaintiff has provided "good reasons" for not seeking further medical treatment based on his financial situation and his minimal options for treatment while in prison.  It was therefore improper for the ALJ to draw credibility inferences about the severity of Plaintiff's symptoms from the paucity of "medical source statements or other expressions of opinions from treating doctors."  AR at 25.

d)  *Plaintiff's Criminal History*

Finally, the ALJ noted that Plaintiff served time "in prison for armed robbery [between 1996 and 2004], which is considered a crime of moral turpitude."  AR at 18, 24. He concluded that this criminal history "does have some impact on the claimant's credibility."  AR at 24.

The Tenth Circuit has upheld credibility assessments by ALJs who considered a claimant's criminal history, particularly for crimes involving dishonest acts or false statements.  *See, e.g., Bolton v. Barnhart*, 117 F. App'x 80, 85 (10th Cir. 2004) (unpublished)

(finding "ALJ's credibility analysis . . . legally sound" where ALJ found that claimant's status as a "convicted felon [for writing fraudulent checks] tends to lessen his credibility").  Armed robbery, while serious, does not involve a dishonest act or false statement.  Furthermore, the conviction occurred nearly twenty years ago, which greatly reduces its probative value in assessing Plaintiff's credibility.  AR at 18; *see Ghant v. Bowen*, 930 F.2d 633, 638 (8th Cir. 1991) (finding "history of incarceration ha[d] no effect on [a claimant's] credibility" where claimant "was incarcerated more than twenty years ago for committing armed robbery").  Further still, there is little in the record to indicate that Plaintiff has run into any trouble with the law since this isolated incident.[6]

Although ALJs may consider a Social Security claimant's felony conviction if it "was just one of many factors . . . ," *Fisher v. Astrue*, No. 11-00689, 2013 WL 622355, at *3. (N.D. Okla. Feb. 20, 2013), it is not enough, standing alone, to discredit Plaintiff's testimony.  Given the nature of Plaintiff's conviction, the distance in time since its occurrence, and the absence of wrongdoing since, Plaintiff's conviction does not amount to substantial evidence to support the ALJ's credibility determination.

The Court therefore finds that Plaintiff's criminal history is of negligible value in evaluating his credibility regarding the extent of his physical symptoms.

    e)   *Taken together, the factors cited by the ALJ do not amount to substantial evidence to support his credibility determination*

In light of the above, the Court concludes that the ALJ's credibility assessment was

---

[6] Plaintiff was on misdemeanor probation at the time of his disability determination hearing for trespassing into a vacant building in an attempt to stay warm while he was homeless.  AR at 52.

not supported by substantial evidence.  The ALJ's arguments, "taken together, [do not]

provide a sufficient basis for rejecting [Plaintiff's] subjective complaints of disabling

[fatigue]."  *Madron v. Astrue*, 311 F. App'x at 179 (when each of the ALJ's reasons for

discounting claimant's credibility was erroneous, their combination did not constitute

substantial evidence).

It is, however, important to clarify that the Court takes no position on whether

Plaintiff is ultimately entitled to benefits or whether his complaints of chronic fatigue are

credible.  On remand, the ALJ is free to consider, for example, any inconsistencies in

Plaintiff's statements.  The ALJ may also properly discredit Plaintiff's claimed symptoms

by citing to *specific* work activity that exceeded Plaintiff's reported daily activities,

provided that he identifies the purported discrepancies.  In short, "remand 'simply

assures that the correct legal standards are invoked in reaching a decision based on the

facts of the case.'"  *Kepler v. Chater*, 68 F.3d 387, 391 (10th Cir. 1995) (quoting *Huston v.

Bowen*, 838 F.2d 1125, 1132 (10th Cir. 1988)).

### B.  Plaintiff's Due Process Claim

Plaintiff also claims that his due process rights were violated when he was denied

benefits.  Specifically, he states that the ALJ's "arbitrary exercise of government power

did not afford [him] procedural fairness . . . ."  *Doc. 1* at 3.

As explained above, "social security hearings must comport with the procedural

due process of requirements of notice and hearing."  *Yount v. Barnhart*, 416 F.3d 1233,

1235 (10th Cir. 2005).  "[A]part from core due-process violations such as the failure to give

notice or an opportunity to be heard, when . . . a party complains about the course of administrative proceedings, that party must demonstrate that the adjudication was infected by some prejudicial, fundamentally unfair element." *Energy W. Mining Co. v. Oliver*, 555 F.3d 1211, 1219 (10th Cir. 2009) (internal quotations omitted); *accord Mays v. Colvin*, 739 F.3d 569, 573 (10th Cir. 2014). Conclusory allegations alone are not enough to support an allegation of due process. *Cf. Estate of Lego v. Leavitt*, 244 F. App'x 227, 232 (10th Cir. 2007) (denying due process claim where plaintiff "failed to allege facts to support [the] allegation").

Here, Plaintiff alleges no facts whatsoever to support his due process claim, much less to show that he was prejudiced by any purported due process violation. Moreover, the record reflects that Plaintiff was given more than adequate process. He received notice and hearing on his disability determination claim, as well as a "meaningful opportunity to address the post-hearing evidence" by submitting detailed briefs to the ALJ for review. *Yount*, 416 F.3d at 1236. Without any further support for Plaintiff's conclusory allegations, the Court must dismiss his due process claim.

## V.   CONCLUSION

Plaintiff has demonstrated that the ALJ erred in his credibility assessment pertaining to the intensity of Plaintiff's symptoms. Plaintiff has not, however, alleged facts sufficient to support an allegation of that his due process rights were violated during the course of the administrative proceedings.

IT IS THEREFORE ORDERED that Plaintiff's due process claim is DISMISSED and

his Motion to Reverse or Remand (*doc. 19*) is GRANTED.  This action is hereby remanded

to the Commissioner for further proceedings consistent with this opinion.

_____

GREGORY B. WORMUTH
UNITED STATES MAGISTRATE JUDGE
**Presiding by consent**